IN the MATTER OF the MENTAL CONDITION OF SHIRLEY J.C.:

SHIRLEY J.C., Appellant,

v.

WALWORTH COUNTY, Respondent.†

Court of Appeals

*No. 92-1231. Submitted on briefs October 1, 1992.—Decided November 11, 1992.*

(Also reported in 493 N.W.2d 382.)

†Petition to review denied.

372

On behalf of the appellant, the cause was submitted on the briefs of *Larry D. Steen* of *Godfrey, Neshek & Worth, S.C.*, of Elkhorn.

On behalf of the respondent, the cause was submitted on the brief of *Dianne M. Soffa*, assistant corporation counsel.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J.   Shirley J.C. appeals from two orders entered in the trial court. The first is an order granting summary judgment in favor of the state in Shirley's involuntary commitment hearing and committing her to inpatient psychiatric treatment. The second order denies Shirley's postcommitment motion to vacate the order of commitment. The major issue on appeal is whether summary judgment is appropriate in a proceeding for involuntary commitment under sec. 51.20,Stats., when the subject contests the commitment request. We hold that summary judgment is inappropriate in such situations because an individual creates material issues of fact by contesting the need for treatment, and because summary judgment would violate due process.

The relevant facts are brief. Shirley was the subject of an emergency detention under sec. 51.15, Stats., on November 13, 1991. The trial court held a probable cause hearing pursuant to sec. 51.20(7)(a), Stats., on November 15. Based upon affidavits from two court-appointed psychiatrists, the court found probable cause to detain Shirley pending her final commitment hearing.

At the hearing on the motion for summary judgment, Shirley's counsel contended that these affidavits were not sufficient proof of dangerousness to support summary judgment because they were based on records of past behavior. Counsel also objected to the summary

373

judgment because Shirley's liberty was at stake. She argued,

> I understand that a mental commitment proceeding is a civil action and not a criminal action. But it can be likened to the criminal action in that; even if a crime is not alleged to have no [sic] defenses, or the facts are all set forth, the police reports are still there. She is entitled to a jury trial.

Finally, Shirley's counsel objected to the summary judgment on the ground that Shirley would lose substantial liberty interests if she were summarily committed. Shirley did not offer any evidence in response to the psychiatrists affidavits.

The trial court granted the county's motion for summary judgment. The court stated:

> I'm uncertain in some respects. . .. Given those circumstances, I find the summary judgment should lie in this particular case. . .. In actual fact, it appears to the Court that one party is just going to put the State through their proof, but has no intention of introducing evidence or able to formulate or suggest evidence by affidavit or sworn testimony to the contrary, of the State's case. Where the State, through evidentiary affidavit and through the testimony of an officer has established its case. I don't think there is an automatic right to trial. No matter what I think, there has to be a legitimate contest on the issue. I don't think the question is here at this stage of the record.
>
> Therefore, I will grant the motion for summary judgment . . ..

The trial court then committed Shirley to the sec. 51.42, Stats., board. Shirley brought a motion for postconviction relief, which was denied. She now appeals.

Before addressing the main issue, we will briefly discuss two preliminary arguments raised on appeal. First, the county contends that this case is moot because Shirley is no longer the subject of a sec. 51.20, Stats., commitment. However, our supreme court has recognized exceptions to the general rule of dismissal for mootness. We will not dismiss a case for mootness

> [w]here the issues are of great public importance, . . . where the issue is likely to arise again and should be resolved by the court to avoid uncertainty, or where a question was capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within the time that would have a practical effect upon the parties.

*In re L.W.*, 167 Wis. 2d 53, 66-67, 482 N.W.2d 60, 64 (1992) (citations omitted) (quoting *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 229, 340 N.W.2d 460, 464 (1983)).

Whether summary judgment may be issued against an individual in a sec. 51.20, Stats., involuntary commitment proceeding is an issue of great public importance. Our decision will affect the liberty interests and substantial rights of all people subjected to involuntary commitment in this state. Furthermore, the issue is likely to arise again. The county informed the trial court that other counties have expressed an interest in the use of summary judgment in sec. 51.20 proceedings. Finally, this issue is capable of repetition, but evades review. The usual period of initial commitment under sec. 51.20 is six months. *See* sec. 51.20(13)(g). Appeals can rarely be completed within this time frame. For these reasons, we elect to decide this appeal.

The second issue raised by the parties is whether counsel properly preserved Shirley's statutory right to a jury trial. The court must make arrangements for a jury trial to determine whether the conditions for commitment have been met "[i]f before involuntary commitment a jury is demanded by the individual against whom a petition has been filed . . . *or by the individual's counsel if the individual does not object."* Section 51.20(11)(a), Stats. (emphasis added). The county argues that Shirley's right to a jury trial is waived because her agreement with, or lack of objection to, counsel's request is not in the record.

We disagree. The statute clearly and unambiguously requires that a jury demand be made by either counsel or the subject individual. It does not require an affirmative statement of no objection from the individual. We assume that no objection was made because none is in the record. Shirley therefore preserved her right to a jury trial in this proceeding.

We now reach the major issue on this appeal. The first question is whether the sec. 51.20(11)(a), Stats., right to a jury trial precludes summary judgment as a matter of law. We note that the rules of evidence in civil actions and s. 801.01(2) apply to any judicial proceeding or hearing under [ch. 51, Stats.]. Section 51.20(10)(c). Therefore, chs. 801 to 847, Stats., govern all proceedings under ch. 51. *See* sec. 801.01(2), Stats. The county argues that because the summary judgment statute, sec. 802.08, Stats., is included within secs. 801 to 847, summary judgment is available for use in sec. 51.20 proceedings.

Shirley responds that the sec. 51.20(11)(a), Stats., right to a jury trial supersedes the rules of civil procedure. She argues that the language in sec. 51.20(11)(a) is

mandatory and requires that a jury trial take place in all involuntary commitment proceedings for which a jury is demanded. Her contention is that the right to a jury trial under sec. 51.20 is unconditional.

The purpose of summary judgment is to determine whether an issue can be resolved without a trial. *Bulgrin v. Madison Gas & Elec. Co.*, 125 Wis. 2d 405, 407, 373 N.W.2d 47, 49 (Ct. App. 1985). Summary judgment is to be granted only if the court finds that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Section 802.08(2), Stats. Thus, summary judgment does not deprive a litigant of the right to a jury trial. It simply allows the court and the parties to avoid a jury trial when no issues exist for the jury to decide. We therefore accept the county's argument that a statutory right to a jury trial does not, standing by itself, preclude the use of summary judgment. However, this conclusion does not entirely resolve the issue before us.

Here, the real question is whether an involuntary commitment proceeding under sec. 51.20, Stats., can ever be without material issues of fact if the subject individual refuses voluntary treatment. The logical answer to this question is no. Simply by refusing to be voluntarily committed, an alleged mentally ill individual joins the question of whether he or she fits the criteria for involuntary commitment under sec. 51.20. This creates a genuine issue of material fact and renders involuntary commitments in which the subject individual contests the need for treatment inappropriate for summary judgment.

377

Furthermore, if we were to allow summary judgment to be used in involuntary commitment proceedings, we would violate due process. We recognize that the due process standard to be applied in involuntary commitment cases at the hearing stage is to be a flexible one, and need not be as strictly construed as that applied in criminal proceedings. *In re Parham*, 95 Wis. 2d 21, 25, 289 N.W.2d 326, 328 (Ct. App. 1979). The statutory requirements for hearings under sec. 51.20, Stats., allow for less stringent due process standards by requiring only five out of six jurors to concur in a verdict, as opposed to the unanimous verdict required in criminal proceedings. *See* sec. 51.20(11)(b). The statute does not, however, allow commitment without a hearing. In fact, a hearing is explicitly required. *See* sec. 51.20(10)(c). If we were to allow summary judgment, the hearing requirement in the statute would be meaningless.

Furthermore, we observe that

> [t]he power of the state to deprive a person of the fundamental liberty to go unimpeded about his or her affairs must rest on a consideration that society has a compelling interest in such deprivation. In criminal cases, this authority is derived from the police power, granted because of the necessity of protecting society from anti-social actions. This power is tempered with stringent procedural safeguards designed to protect the rights of one accused of crime . . .. In civil commitment proceedings the same fundamental liberties are at stake.

*Lessard v. Schmidt*, 349 F. Supp. 1078, 1084 (E.D. Wis. 1972) (footnote omitted), *vacated on other grounds*, 414 U.S. 473 (1974). The subject of an involuntary commitment loses fundamental liberties just as surely as does

378

someone who has been sentenced to a period of confinement. We therefore analogize a person's refusal to be voluntarily committed to a not guilty plea in a criminal trial.

In a criminal case, to grant a summary judgment to the state, even where the state's evidence is overwhelming and the evidence of the defendant to the contrary is totally lacking, would be anathema to all of our precepts of constitutional law. *State v. Koput,* 142 Wis. 2d 370, 392, 418 N.W.2d 804, 813 (1988). Similarly, in an involuntary commitment, to grant a summary judgment would offend our concepts of due process even when the only evidence presented by the subject of the commitment is a denial of the need for treatment. We conclude that the flexibility in the due process standard referred to in *Parham* cannot be extended to allow summary judgment in cases in which the subject contests the commitment request.

Two cases require discussion here. First, we are aware that this court has previously allowed summary judgment in a CHIPS (children in need of protection and services) proceeding. *See In re F.Q.,* 162 Wis. 2d 607, 470 N.W.2d 1 (Ct. App. 1991). That case involved the placement of several children whose mother was incarcerated at Taycheedah State Prison. We held that summary judgment was appropriate because ch. 48, Stats., does not contain a provision for summary judgment. Therefore, the Code of Civil Procedure applied. *Id.* at 612, 470 N.W.2d at 2-3.

*F.Q.* is distinguishable from the case before us. The CHIPS proceeding did not deprive anyone of liberty; it merely placed the children in protective environments because their mother was unable to provide for them. We concede that the mother had an interest in choosing where her children would be placed. However, that inter-

379

est did not rise to the level of the liberty interests at stake in an involuntary commitment proceeding. Our holding here in no way conflicts with our holding in *F.Q.*

Second, our supreme court has held that a directed verdict may be granted in the responsibility phase of a trial in which the defendant pled not guilty by reason of mental disease or defect. *See State v. Leach,* 124 Wis. 2d 648, 662-63, 370 N.W.2d 240, 248-49 (1985). The court held that a judge may withhold the issue of mental disease or defect from the jury if the evidence was insufficient to create a jury question. *Id.* at 663, 370 N.W.2d at 249. It reasoned that a defendant has no right to insist that the jury be given a special opportunity to acquit him on the basis of nothing more than speculation, conjecture or compromise concerning a defense to the crime with which he is charged. *Id.* at 663, 370 N.W.2d at 248.

"[I]n considering the question of insanity, we are largely concerning ourselves with the difference in the institutional treatment of the defendant. *Koput,* 142 Wis. 2d at 392, 418 N.W.2d at 813 (quoting *State v. Shoffner,* 31 Wis. 2d 412, 443, 143 N.W.2d 458, 474 (1966) (Wilkie, J. concurring)). Therefore, allowing a directed verdict in the responsibility phase of a criminal trial determines only where a person will be incarcerated. It does not determine *whether* that person will lose his or her liberty. This distinction makes the holding in *Leach* inapplicable to involuntary commitment proceedings in which the decision is *whether* to deprive a person of liberty.

Finally, the county claims that Shirley has not shown that she was prejudiced by the summary judgment. Shirley was deprived of her constitutional liberty interests by virtue of the trial court's order. A depriva-

380

tion of fundamental liberty is sufficient to show prejudice, and we reject the county's argument.

Our holding does not require a jury trial in all cases. We simply hold that an individual subject to sec. 51.20, Stats., involuntary commitment must be given a final hearing and that summary judgment may not be used if the individual is competent and disputes the need for treatment. If the individual has requested a jury trial, as did Shirley in this case, then a jury trial is required by statute. Normally, upon reversal, we would remand for further proceedings in all probability, a jury trial. Because the parties have informed us that Shirley is no longer the subject of commitment, remand is unnecessary. We reverse.

*By the Court.*—Orders reversed.