IN the INTEREST OF TRENT N., a person under the age of 18:

STATE of Wisconsin, Petitioner-Appellant,

v.

TRENT N., Respondent-Respondent.

Court of Appeals

*Nos. 96–2327, 96–2328. Oral argument June 10, 1997.—Decided August 6, 1997.*

(Also reported in 569 N.W.2d 719.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Thomas L. Storm,* district attorney, and *Timothy W. Funnell,* assistant district attorney, with oral argument by *Timothy W. Funnell.*

On behalf of the respondent-respondent, the cause was submitted on the brief of *Eileen Hirsch,* assistant state public defender, with oral argument by *Eileen Hirsch.*

On behalf of Wisconsin Association of School Boards, Inc., an amicus curiae brief was filed by *Jill Weber Dean* of *Lathrop & Clark* of Madison.

On behalf of Wisconsin Coalition for Advocacy, an amicus curiae brief was filed by *Roy Froemming* and *Jeffrey Spitzer-Resnick* of Madison.

Before Snyder, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J.   In this case we determine whether a Wisconsin juvenile court is barred from exercising its jurisdiction in a delinquency proceeding while administrative review proceedings are pending under the federal Individuals with Disabilities Education Act (IDEA)[1] and its Wisconsin statutory equivalent. The State appeals from a juvenile court

---

[1] 20 U.S.C. § 1400 *et seq.*

order holding that the court is barred from exercising its jurisdiction under those circumstances. We hold that the juvenile court had jurisdiction. We reverse the juvenile court's order and remand for further proceedings on the delinquency petitions.

THE IDEA AND WISCONSIN STATUTE § 115.81

Before reciting the facts of this case, we address the IDEA. Congress enacted the IDEA with the intent "to assure that all handicapped children have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected . . . ." 20 U.S.C. § 1400(c). States must provide special education in accordance with the IDEA in order to receive federal financial assistance.

In order to achieve its goal, the IDEA "establishes a comprehensive system of procedural safeguards designed to ensure parental participation in decisions concerning the education of their disabled children and to provide administrative and judicial review of any decision with which those parents disagree." *Honig v. Doe*, 484 U.S. 305, 308 (1988).[2] States seeking to receive federal assistance must implement policies in keeping with the goals of the IDEA and must provide the secretary of education with detailed plans of programs, procedures and timetables under which

_____

[2] The Individuals with Disabilities in Education Act (IDEA), then the Education of the Handicapped Act (EHA), was discussed extensively by the United States Supreme Court in *Honig v. Doe*, 484 U.S. 305 (1988). Our discussion of the purposes and procedures of the IDEA tracks, in large part, the Supreme Court's decision in *Honig*.

compliance will be effectuated. *See id.* at 310–11; *see also* 20 U.S.C. §§ 1412(1) and 1413(a).

The IDEA additionally mandates the development of an "individualized education program" (IEP) for each disabled student. In so doing, the IDEA envisions active parental involvement in the creation and evolution of the IEP. *See Honig*, 484 U.S. at 311. The parental role in the education of disabled children is protected by procedural safeguards under the IDEA which "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *See id.* at 311–12.

The Wisconsin legislature responded to the IDEA by enacting Subchapter V of ch. 115, STATS., (Children With Exceptional Educational Needs).[3] Among its provisions, this chapter sets forth the state exceptional educational needs plan, *see* § 115.78; the procedure for identifying and providing special education to children with exceptional needs, *see* § 115.80; and provisions for the development of IEPs, *see* § 115.80(4).

At issue in this appeal are the IDEA procedural safeguards implemented under § 115.81, STATS. As noted above, these safeguards afford parents the opportunity to obtain review of any educational decisions made for their child by their school board. The school board is required to "fully inform the parent of any action it plans to take regarding the parent's child and of all procedural safeguards available to the parent." Section 115.81(2). If the parent disagrees with the action or inaction of the school board with regard to his or her child's educational placement, the parent may file a written request with the department of

---

[3] The legislature has since amended certain provisions under ch. 115, STATS. All references are to the 1993–94 statutes.

public instruction for a hearing before an impartial hearing officer. *See* § 115.81(1)(a) and (6). Likewise, when a parent refuses to grant consent or revokes consent with regard to an educational placement, the school board may request a hearing to override the parent's decision. *See* § 115.81(1)(b).

Once the hearing has been held and the decision issued, if the parent disagrees with the outcome, the parent may appeal the decision to the circuit court for the county in which the child resides. See § 115.81(8), STATS.

The IDEA, 20 U.S.C. § 1415(e)(3), and the Wisconsin equivalent also contain a "stay put" provision. Wisconsin's provision reads as follows:

> (3) STATUS DURING APPEAL. The school board may not change the educational placement of a child with exceptional educational needs who is the subject of a hearing, appeal or court proceeding conducted under this subchapter during the pendency of the hearing, appeal or court proceeding unless the change is made with the written consent of the child's parent. If the health or safety of the child or of other persons would be endangered by delaying the change in assignment, the change may be made earlier, upon order of the school board, but without prejudice to any rights that the child or parent may have.

Section 115.81(3), STATS. Thus, in most circumstances, a school may not change the educational placement of

the child until the hearing, appeal or court proceedings under § 115.81 have been exhausted.[4]

## FACTS

We now turn to the facts of this case. Trent was diagnosed as emotionally disturbed (ED) at age three. When the delinquency petitions at issue in this case were initiated, Trent was partially enrolled in ED classes at Woodworth Junior High School in the Fond du Lac school district. Also at this time, Trent's family and the Fond du Lac school district were involved in the administrative review procedures under the IDEA.

The juvenile court originally became involved with Trent as the result of two incidents. On September 15, 1995, Trent allegedly hit another student in the chest while exiting a classroom. On November 29, 1995, Trent allegedly lit a match and threw it in a school locker. As a result of these actions, the assistant principal at Trent's school contacted Steve Kaufman, the Police School Liaison Officer (PSLO). Subsequently, the State filed a juvenile delinquency petition alleging battery contrary to § 940.19(1), STATS., and negligent handling of burning material contrary to § 941.10(1), STATS. Trent entered into a consent decree regarding these charges.

On April 25, 1996, Trent allegedly engaged in disorderly conduct at the school. Based on this incident, the State filed a motion to revoke the consent decree and also filed a further delinquency petition alleging disorderly conduct contrary to § 947.01, STATS. Trent responded with a motion to dismiss the new

---

[4] If, however, a student poses an immediate threat to the safety of others, school officials may temporarily suspend him or her for up to ten school days. *See Honig,* 484 U.S. at 325.

delinquency petition and a concurrent motion to dismiss the State's motion to revoke the consent decree. He argued that because he was emotionally disturbed and was enrolled in special education classes, and because administrative procedures under the IDEA were then ongoing, the juvenile court proceedings were premature. Instead, Trent argued that the juvenile court should not exercise its jurisdiction until after the administrative proceedings under the IDEA had been completed.[5] The court granted Trent's motions, ruling that, "The filing of the delinquency petition in this case is premature because all of the procedural safeguards available to the juvenile and parents in sec. 115.81 Wis. Stats., and 20 U.S.C. 1400 et seq have not been exhausted." The State appeals. The Wisconsin Coalition for Advocacy and the Wisconsin Association of School Boards, Inc., participate in this appeal as amici curiae.

## DISCUSSION

The issue on appeal, as framed by the State, is whether the procedural safeguards under the IDEA and § 115.81, STATS., must be exhausted before the state can file a delinquency petition against an emotionally disturbed student for alleged delinquent behavior at school.

As a threshold matter, we address two recent developments which raise the prospect of mootness. The parties have informed us of a recent amendment to

---

[5] Trent also argued that the intervention of the juvenile court violated the "stay put" provision of the IDEA. However, it is not clear from the appellate record or the parties' briefs whether the juvenile court proceedings actually resulted in any change in Trent's educational placement under the "stay put" provisions of the IDEA.

734

the federal IDEA law which expressly allows a State to prosecute a child with a disability otherwise covered by the IDEA.[6] However, the Wisconsin legislature has not as yet responded with equivalent legislation at the state level. Thus, under existing Wisconsin law, this case is not moot on this ground.

In addition, the parties have also informed us that since this appeal was filed, Trent and his family have entered into a settlement agreement with the Fond du Lac school district which concludes Trent's administrative appeal regarding the propriety of his educational placement. Thus, Trent's appeal is arguably moot on this ground.

Regardless, this court has the discretion to address issues that are otherwise moot when the issues presented are of great public importance and are likely to arise again. *See Shirley J.C. v. Walworth County*, 172 Wis. 2d 371, 375, 493 N.W.2d 382, 384 (Ct.App. 1992). Because the issue is important and is likely to

---

[6] The parties agree that H.R. 5, 105th Cong. (1997), amends the IDEA and was signed by President Clinton on June 4, 1997. Section 615 of the enacted amendments relates to procedural safeguards and provides:

(9) REFERRAL TO AND ACTION BY LAW ENFORCEMENT AND JUDICIAL AUTHORITIES.—

(A) Nothing in this part shall be construed to prohibit an agency from reporting a crime committed by a child with a disability to appropriate authorities or to prevent State law enforcement and judicial authorities from exercising their responsibilities with regard to the application of Federal and State law to crimes committed by a child with a disability.

(B) An agency reporting a crime committed by a child with a disability shall ensure that copies of the special education and disciplinary records of the child are transmitted for consideration by the appropriate authorities to whom it reports the crime.

arise again under existing Wisconsin law, we choose to address the matter on its merits.

We begin by addressing the parties' disagreement as to the appropriate standard of review in this case. This disagreement results from the different interpretations which the parties put on the juvenile court's ruling.

Trent argues that the juvenile court's decision represents an exercise of discretion. At oral argument Trent expanded on this theory, arguing that the court concluded, under the particular facts of this case, that Trent's best interests were served by deferring the juvenile court proceedings until the IDEA administrative proceedings were concluded. Trent argues that the juvenile court has the statutory and inherent authority to make this determination at this early stage of the proceedings. In contrast, the State argues that the juvenile court ruled, as a matter of law, that the IDEA precluded the court from exercising its jurisdiction until the administrative proceedings were completed.

We agree with the State. First, Trent's motion to dismiss contended that the juvenile court should dismiss the petitions "because initiation of these petitions is in violation of the [IDEA], chapter 115 of the Wis. Stats. . . ." That statement rings more like a statutory construction argument than one addressed to the court's discretion. Second, and more importantly, the trial court's statements at the hearing and in its bench decision reflect thinking which casts the issue in statutory construction terms. Statutory construction, of course, presents a question of law. *See State v. Muniz,* 181 Wis. 2d 928, 931, 512 N.W.2d 252, 253 (Ct.

App. 1994). For instance, the court said that the IDEA administrative procedures "take priority, and that these [petitions], because they in effect criminalize misbehavior in school, may not be commenced by the State against the juvenile until such time as the court can be satisfied and the State can allege that all of the safeguards provided for the child and parents in 115.81 have been exhausted." Reduced to its essence, the court was saying that administrative process had to be exhausted before the court could assume jurisdiction. This was one of the arguments made by Trent to the juvenile court.

After reviewing the trial court's decision in its entirety, we conclude that the court construed the IDEA statutes and applied them to the facts of this case. As noted, that presented the trial court with a question of law. *See id.* We will review the court's ruling on that basis.

"The cardinal rule in statutory interpretation is to discern the intent of the legislature. We ascertain legislative intent by examining the language of the statute, as well as its scope, history, context, subject matter, and purpose." *State v. Rosenburg*, 208 Wis. 2d 191, 194, 560 N.W.2d 266, 267 (1997) (citation omitted). Statutes are to be given a reasonable interpretation and not one that will work an absurd result. *See State v. Mendoza*, 96 Wis. 2d 106, 115, 291 N.W.2d 478, 483 (1980).

The State contends that the juvenile court's jurisdiction, or its competency to exercise that jurisdiction, is not curtailed or governed by the IDEA. Thus, the State argues that the delinquency proceedings in this case may proceed in the face of the ongoing administrative proceedings occurring between

737

the school and the parents under the IDEA. Trent responds that we should uphold the juvenile court's ruling for three reasons: (1) state laws should be interpreted in a way which accommodates the purposes of the federal special education law; (2) the juvenile petitions filed against Trent were initiated by his school; and (3) the trial court properly considered Trent's best interest and thus was entitled to dismiss the petition on this ground. We will address each of Trent's arguments in turn.

### *The IDEA and the Juvenile Court*

The IDEA was implemented in order "to assure that all handicapped children have available to them . . . a free appropriate public education. . . ." 20 U.S.C. § 1400(c). Trent observes that the purposes of a review process under the IDEA and a juvenile court proceeding are very different, "The IDEA administrative and court review process focuses on the school's performance. . . . In juvenile court, of course, school performance is not a relevant consideration in a determination of delinquency." Therefore, Trent argues that the juvenile court proceeding "provides the school with an opportunity to 'end run' its responsibilities to handicapped children by referring them to juvenile court."

However, if the school is truly engaging in an "end run," that concern can be addressed at the various investigative and referral levels within the juvenile court system which determine whether the case belongs in the juvenile system in the first instance, and, if so, how it should be processed. Trent's argument assumes that intake workers and prosecutors will rubber stamp the referral of an IDEA student to the juvenile court system. We see no reason to conclude

738

that these authorities will abandon their statutory duties to exercise their discretion in a fair and impartial manner, always bearing in mind the best interests of the child. And should such discretion be misused, it is always subject to the superintending authority of the juvenile court.

Moreover, in most cases, the juvenile court's invocation of its jurisdiction will not frustrate the IDEA or its "stay put" provisions. The school's responsibility under the IDEA, to provide disabled children with an appropriate education, does not end when a child enters the juvenile system. Both case law and statutes support the proposition that the IDEA continues to work even when a child is involved in juvenile court proceedings. Any administrative proceedings underway between the school and the parents to secure a more appropriate IEP may continue regardless of the child's status in juvenile court.[7] The school's responsibility to the child is constant. Therefore, under the IDEA and the Wisconsin statutes, Trent is not without remedy if the school is attempting to "end run" its responsibilities. Nor is the State without remedy if Trent is engaging in delinquent activity.

■

We conclude that the IDEA does not preclude the ability of the juvenile court to invoke its jurisdiction when a delinquency petition is filed.

---

[7] We note that in this case, Trent's mother had commenced a review of Trent's individual education program (IEP) under the IDEA and § 115.81, STATS., at the time the juvenile court proceedings were commenced. We see nothing in this record which reveals that those proceedings were frustrated by the juvenile court proceedings.

Trent correctly argues that the purpose of the IDEA is to prevent schools from initiating juvenile proceedings against students with exceptional educational needs. However, Trent additionally argues that "it is clear that frustrated school officials initiated [the] juvenile court action" in this case. We disagree.

Under Wisconsin statutes, schools do not have the authority to initiate juvenile proceedings.[8] Therefore, the delinquency petitions in this case could have been filed only by the district attorney. In interpreting the purpose of the IDEA, the court in *Honig* stated, "We think it clear, however, that Congress very much meant to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." *Honig*, 484 U.S. at 323. Such unilateral authority is exercised when the school suspends or expels an emotionally disturbed student as was the case in *Honig* or when the school initiates delinquency proceedings against a student. Thus, the IDEA is targeted at school action, not the statutory authority of

---

[8] The Wisconsin statute which granted the authority for the filing of juvenile petitions was § 48.25(1), STATS., 1993–94. Section 48.25(1) provides: "A petition initiating proceedings under [ch. 48] shall be signed by a person who has knowledge of the facts alleged or is informed of them and believes them to be true. If a petition under s. 48.12 is to be filed, it shall be prepared, signed and filed by the district attorney...."

We note that portions of ch. 48, STATS., have been repealed, amended or recreated and are now found in ch. 938, STATS. However, at the time of the proceedings at issue in this case, Trent was subject to the statutes under ch. 48. Therefore, we will refer to the 1993–94 statutes in our analysis.

the State to file a delinquency petition, nor the jurisdiction of the juvenile court.

` Trent cites to two cases, *Morgan v. Chris L.*, 927 F. Supp. 267 (E.D. Tenn. 1994), *cert. denied,* 1997 WL 221304 (1996), and *Flint Bd of Educ. v. Williams,* 276 N.W.2d 499 (Mich. Ct. App. 1979), in support of his contention that school officials may not initiate juvenile court proceedings. It is true that in both cases the delinquency petitions against the disabled students were dismissed because all of the protections under the IDEA had not been satisfied. *See Chris L.,* 927 F. Supp. at 271, *Williams,* 276 N.W.2d at 502–03. However, in both cases the applicable state law allowed the school to initiate the proceedings. *See Chris L.,* 927 F. Supp. at 269–70; *Williams,* 276 N.W.2d at 502. As noted, Wisconsin schools do not have statutory authority to initiate juvenile petitions. That power is reserved for the district attorney.

Trent argues that his school essentially initiated the juvenile proceedings against him and that "while there is a technical and legal distinction between the schools and the juvenile courts, it appears that in this case, that distinction was blurred." We disagree. The decision to file a delinquency petition is ultimately made by the district attorney. A school report to the PSLO, other juvenile court authorities or the district attorney does not obligate the State to file a delinquency petition.[9] Thus, a Wisconsin school is powerless to initiate a delinquency proceeding.

---

[9] A juvenile referral may be subject to various levels of review before and after a petition is filed. A juvenile referral must be reviewed by an intake worker. *See* § 48.24, STATS. The intake worker then recommends whether a petition should be filed. *See id.* at subd. (5). The district attorney may then file a petition under § 48.25(1), STATS. In addition, the juvenile judge

We conclude that the IDEA does not trump the juvenile court's jurisdiction when a delinquency petition is filed against a child covered by the IDEA.

### Basis of Dismissal

Trent contends that the trial court properly considered Trent's best interests and was entitled to dismiss the petitions on that ground. We are unpersuaded. While it is true that the judge could have dismissed the juvenile petitions under § 48.21(7), STATS., the judge did not do so in this case.[10] As we concluded earlier in this opinion, Trent's argument that the trial court's decision was grounded in a best interests analysis is not supported by the record. Instead, we conclude that the trial court's decision was based on its belief that procedural safeguards under the IDEA and ch. 115, STATS., took priority over the court's competency to proceed at that moment. Thus, the dismissal was based on the court's view of the law, not on considerations of Trent's best interests.

---

may act as an intake worker, see § 48.10, STATS., and may dismiss the petition and refer the matter to the intake worker for informal disposition in accordance with § 48.245, STATS. See § 48.21(7), STATS.

[10] Section 48.21(7), STATS., provides:

> INFORMAL DISPOSITION. If the judge or juvenile court commissioner determines that the best interests of the child and the public are served, he or she may enter a consent decree under s. 48.32 or order the petition dismissed and refer the matter to the intake worker for informal disposition in accordance with s. 48.245.

Here, the court did not refer the matter back to the intake worker for informal disposition after dismissing the petitions.

## CONCLUSION

We conclude that ch. 115, STATS., as it implements the IDEA, does not limit the jurisdiction of the juvenile court. We also conclude that the school did not initiate the delinquency proceedings. Finally, we hold that the court did not dismiss the petitions on the basis of Trent's best interests. We reverse the orders dismissing the petitions. We remand for further proceedings on the petitions.

*By the Court.*—Orders reversed and cause remanded.