IN RE the TERMINATION OF PARENTAL RIGHTS OF KRISTEENA A.M.S., a Person Under the Age of 18:

DOOR COUNTY DEPARTMENT OF HEALTH & FAMILY SERVICES, Petitioner-Respondent,

v.

SCOTT S., Respondent-Appellant.†

Court of Appeals

*No. 99–0719. Submitted on briefs September 2, 1999.—Decided September 8, 1999.*

(Also reported in 602 N.W.2d 167.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Mary E. Waitrovich*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Lisa M. Vanden Branden*, assistant district attorney, of Sturgeon Bay.

A guardian ad litem brief was submitted by *Colleen A. Cote*, of *Kirkegaard Law Office*, of Sturgeon Bay.

Before Cane, C.J., Hoover, P.J., and Peterson, J.[1]

HOOVER, P.J.   Scott S. appeals the circuit court's order terminating his parental rights to his daughter, Kristeena A.M.S., and the denial of his motion for a new trial. Scott argues six points of error: (1) the circuit court violated his due process rights by directing a verdict on one of the statutory elements; (2) Scott's counsel was ineffective because he failed to object to the circuit court directing a verdict; (3) the motion for a new trial should have been granted because the guardian ad litem (GAL) made improper references to the "best interests of the child" standard; (4) Scott's counsel was ineffective because he failed to object to these references; (5) the circuit court should have granted Scott's motion to suppress expert testimony concerning the likelihood of Scott committing further sex offenses; and (6) the motion for new trial should have been granted because the real controversy was not fully tried. Because Scott's arguments are unpersuasive, the circuit court's order is affirmed.

---

[1] Originally assigned as a one-judge appeal under § 752.31(2)(b), STATS., this case was reassigned to a three-judge panel by order of the chief judge. *See* RULE 809.41(3), STATS.

In August 1996, the circuit court issued a CHIPS[2] order placing Kristeena in the care of her paternal grandparents for a period set to expire in July 1997. At the time of this order, Scott was in prison and the only condition in the order pertaining to him required that should Scott be released from prison, any visitation between him and Kristeena be supervised. Scott was released from prison in June 1997.

In July, the CHIPS order was revised and extended for another year. New provisions relating to Scott required that before Kristeena could be placed with him, he would have to participate in Alcohol and Other Drug Abuse (AODA) group counseling and a sex offender self-help group. He was also ordered to participate in and complete a basic parenting class to demonstrate his ability to live independently in a stable situation, maintain a sober lifestyle, and have no further criminal violations.

In February 1998, the CHIPS order was further revised, requiring Scott to undergo a psychological evaluation with specific emphasis on decision-making skills, thinking patterns, ability to nurture, capacity for empathy, and degree of risk for further sex offenses as related to his ability to parent. In July, the circuit court extended the CHIPS order until July 1999.

In August 1998, a petition for termination of Scott's parental rights (TPR) to Kristeena was filed. The petition alleged Kristeena had been adjudged in need of protection or services and placed outside the home pursuant to a court order, that the county made a diligent effort to provide the court-ordered services and

---

[2] CHIPS is an acronym for "children in need of protection and services." *In re Shirley J.C.*, 172 Wis. 2d 371, 379, 493 N.W.2d 382, 386 (Ct. App. 1992). A CHIPS order is issued pursuant to § 48.13, STATS.

that Scott had failed to meet the conditions established by the court and would not be able to meet the conditions within twelve months of the fact-finding hearing.[3] At trial in October, the court directed the verdict on the question whether Kristeena had been adjudged to be in need of protection or services and placed outside the home pursuant to one or more court orders. The jury found the remaining elements necessary to terminate Scott's parental rights were proven. In December, the circuit court terminated Scott's parental rights to Kristeena and thereafter denied Scott's motion for a new trial. Scott appeals the termination of his parental rights and the denial of his motion for a new trial.

Scott argues that by removing one of the requisite elements under § 48.415(2), STATS., from the jury's consideration, his due process right to a jury trial has been violated. In this instance, Scott does not contend that the element in question was at issue. Rather, he argues that a circuit court may not, as a matter of law, direct a verdict in any termination of parental rights case. Scott

---

[3] Wisconsin law allows parental rights to be terminated if a child is adjudged to be in "continuing need of protection or services." Section 48.415(2), STATS. The department must show "the child has been adjudged . . . to be in need of protection or services and placed . . . outside his or her home pursuant to one or more court orders," § 48.415(2)(a)1, "the agency responsible for the care of the child and the family . . . has made a reasonable effort to provide the services ordered by the court," § 48.415(2)(a)2b, and "the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders . . . and that the parent has failed to meet the conditions established for the safe return of the child . . . and there is a substantial likelihood that the parent will not meet these conditions within the 12-month period following the fact-finding hearing . . . ." Section 48.415(2)(a)3, STATS.

bases this contention on constitutional principles of due process.

Scott contends ·the circuit court improperly directed a verdict on the first statutory element requiring that

> the child has been adjudged to be . . . in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under § 48.345, 48.347, 48.357, 48.363, 48.365, 938.345, 938.357, 938.363, or 938.635 containing the notice required by § 48.356(2) or 938.356(2).

Section 48.415(2)(a), STATS.

We disagree. Ordinarily, the standard of review for a grant of a directed verdict is whether the trial court was "clearly wrong" in refusing to instruct a jury on a material issue raised by the evidence. *Leen v. Butter Co.*, 177 Wis. 2d 150, 155, 501 N.W.2d 847, 849 (Ct. App. 1993). "A motion for a directed verdict should be granted only where the evidence is so clear and convincing that a reasonable and impartial jury properly instructed could reach but one conclusion." *Liebe v. City Finance Co.*, 98 Wis. 2d 10, 18–19, 295 N.W.2d 16, 20 (Ct. App. 1980). Constitutional issues present questions of law that are reviewed de novo. *See, e.g., State v. Migliorino*, 150 Wis. 2d 513, 524, 442 N.W.2d 36, 41 (1989). A TPR proceeding is civil in nature, and the Wisconsin Rules of Civil Procedure permit directed verdicts in civil proceedings. *See* § 805.14(4), STATS.; *In re J.A.B.*, 153 Wis. 2d 761, 765, 451 N.W.2d 799, 800 (Ct. App. 1989). Because the rules of civil procedure apply to TPR proceedings, we conclude that the trial court did not erroneously direct the verdict.

465

In addition, Scott failed to object at trial to the circuit court answering the special verdict questions. "Without a specific objection which brings into focus the nature of an alleged error, a party does not preserve its objection for review." *Id.* at 766, 451 N.W.2d at 800. Scott's failure to object to the directed verdict at trial constitutes a waiver of his right to have this court review the issue on appeal.

Scott also argues that his trial counsel provided ineffective assistance by failing to object to the circuit court directing a verdict on one of the statutory elements required to terminate his parental rights. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established that to prove ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient. The Wisconsin Supreme Court adopted the *Strickland* test to apply to proceedings for the involuntary termination of parental rights. *See In re M.D.S.*, 168 Wis. 2d 995, 1004, 485 N.W.2d 52, 55 (1992). As indicated, directed verdicts are permissible under Wisconsin civil procedure. *J.A.B.*, 153 Wis. 2d at 765, 451 N.W.2d at 800. It is not deficient performance to fail to object when the objection would have been properly overruled. *See, e.g., State v. Teynor*, 141 Wis. 2d 187, 214, 414 N.W.2d 76, 86 (Ct. App. 1987).

Scott argues that to permit a directed verdict in a TRR amounts to using summary judgment procedure. He points to several cases that forbid summary judgment in TPR proceedings and involuntary commitment hearings. *See In re Phillip W.*, 189 Wis. 2d 432, 436, 525 N.W.2d 384, 385 (Ct. App. 1994); *In re Shirley J.C.*, 172 Wis. 2d 371, 373, 493 N.W.2d 382, 383 (Ct. App. 1992). Scott further argues that in the event this court accepts such reasoning, counsel's failure to object to the

directed verdict must be deemed so deficient as to deprive Scott of effective counsel.

We are not persuaded. Not only does *J.A.B.* specifically hold that directed verdicts in TPR proceedings are permissible, Scott's authorities can be distinguished from the present case. In both *Shirley J.C.* and *Phillip W.*, due process violations occurred when summary judgment was granted without the hearing required by statute. *Shirley J.C.* held that involuntary commitment under § 51.20(10)(c), STATS., requires a hearing. *Id.* at 378, 493 N.W.2d at 385. The court held that summary judgment without a hearing is a violation of due process. *Id. Phillip W.* held that summary judgment is inappropriate in TPR proceedings. *Id.* at 436, 525 N.W.2d at 385. In that case however, summary judgment occurred before a fact-finding hearing was held. *Id.* at 437, 525 N.W.2d at 386. The court held that "[t]his hearing is of critical importance because it assures that the termination of a parent's right to the care, custody and management of his or her child is justified." *Id.*

In this case, the verdict was directed as to only one undisputed element of the TPR statute, after a full jury trial in which Scott had ample opportunity to secure discovery and introduce evidence to refute the department's contentions that Kristeena had been in CHIPS custody. When no contrary evidence was produced, the circuit court was justified in directing a verdict as to the first element. Scott's due process rights were not violated; he enjoyed the benefits of all of the procedural devices and safeguards that attend a full trial. Unlike the authorities Scott cites, his parental rights were not summarily terminated.

Next, Scott argues that a new trial should be granted because the GAL twice made improper refer-

ences to the "best interests of the child" standard. First, the GAL stated, "I believe in the *best interests of that little girl* Kristeena, that she is entitled to have you look very carefully and answer—these questions in the way that is absolutely clear from the testimony today." The GAL's more controversial statement was made in closing arguments to the jury. The GAL stated, "I am here because my mission is to try to protect Kristeena's . . . best interests, to try and help you understand what is in the best interests of Kristeena . . . ." Scott claims that these references caused the jury to improperly focus on the best interests of the child rather than on the issue being tried; namely, Scott's compliance with the CHIPS orders. We do not decide whether this language violates the *C.E.W.* rule. Because Scott failed to object at trial to the GAL's statements, he has not preserved the claimed error for appeal. An issue may not be raised for the first time on appeal. *Anderson v. Nelson*, 38 Wis. 2d 509, 514, 157 N.W.2d 655, 658 (1968).

Moreover, any error was nonprejudicial. In *In re C.E.W.*, 124 Wis. 2d 47, 368 N.W.2d 47 (1985), the supreme court held that a TPR proceeding is bifurcated into an initial fact-finding stage and a dispositional stage. *Id.* at 60, 368 N.W.2d at 54. In the initial stage, the fact-finder must decide whether there is clear and convincing evidence that proves the grounds for termination. *Id.* Once grounds have been established, the court must decide whether to terminate the parental rights by determining what is in the best interests of the child. *Id.* The supreme court has thus concluded that the best interests standard is confined to the dispositional phase, and that at the fact-finding stage, the best interests of the child are not to be considered. *Id.* at 60–61, 368 N.W.2d at 54.

In *J.A.B.*, the supreme court held that informing the jury concerning the GAL's role is not error. *Id.* at 770, 451 N.W.2d at 802. Only when the court or the GAL instruct the jury that it should consider the best interests of the child is there reversible error. *See id.* Here the GAL did nothing to imply that the jury should consider the child's best interests in reviewing the evidence, but rather that her best interests require the jury to answer the questions from the evidence. In *J.A.B.*, this court held such information is not error, but in fact is desirable. *Id.* at 770, 451 N.W.2d at 802. Therefore, we believe the GAL's reference to the best interests of the child was harmless and does not make the result unreliable.

Next, Scott claims counsel's failure to object to the GAL's statements deprived him of effective assistance of counsel. We again disagree. Under *Strickland*, any deficiency in counsel's performance must prejudice the defendant so as to make the ultimate result unreliable. *Id.* at 687. Scott has failed to demonstrate that counsel's failure to object to the GAL's closing argument was prejudicial. The evidence that Scott failed to satisfy the CHIPS order's conditions was overwhelming. We reject the contention that the GAL's comments convinced the jury to find the existence of grounds for the termination of parental rights when they otherwise would not have. The jury heard evidence that Scott failed to complete the court-ordered parenting classes, AODA and sex offender treatment and had twice been in trouble with the law since being released from prison.

Scott further argues that the circuit court erred by allowing a psychologist, Dr. Michael Sayers, to testify regarding the likelihood of Scott committing future sex offenses. Scott argues that Sayers' opinion that Scott is

likely to commit future sex offenses was not relevant to any of the issues the jury was required to consider and pursuant to § 904.01, STATS., should not have been admitted. Furthermore, Scott argues that admitting this evidence was highly prejudicial and tainted the verdict, thus requiring a new trial. Because Scott fails to show prejudice, we disagree. *See* § 805.18, STATS.

One of the conditions the CHIPS court placed on Scott was that he participate in a sex offender self-help group. Sayers testified: "I would have to say that I do have concerns about his potential for reoffending, [sic] based on what appears to me to be a *history of inadequate treatment for these issues*." (Emphasis added.) In order to terminate parental rights, § 48.415(2)(a)3, STATS., requires the following element to be proved: "the parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 12-month period following the fact-finding hearing under § 48.424." Sayers' testimony strikes at the heart of the issue; the department must show that Scott has failed to complete the sex offender self-help therapy condition of the CHIPS order or that there is a substantial likelihood he will not satisfy the conditions within twelve months of the hearing. *See* § 48.415(2)(a)3, STATS.

To the extent Sayers' concerns about Scott's potential to reoffend may be prejudicial, Scott's own testimony regarding his failure to complete AODA and sex offender treatment, violations of probation, jail time and seven convictions during his lifetime were far more likely to influence the jury than Sayers' single statement. Therefore, we are satisfied that Sayers' testimony was relevant to the statutory elements and harmless to any potential prejudice.

Finally, Scott argues that a new trial should be granted because the real controversy was not tried. He contends that the jury heard improperly admitted evidence that was so prejudicial as to prevent a full trial on the real issues. *See State v. Hicks*, 202 Wis. 2d 150, 152–53, 549 N.W.2d 435, 436–37 (1996). Because we have already determined that Scott has misassigned error, there was in fact a full trial on all of the issues. Furthermore, to the extent error was committed during the trial, such errors were harmless. We can say with a high degree of certainty that the alleged errors did not "influence the verdict." *Id.* at 171, 549 N.W.2d at 444. As a result, a new trial should not be granted.

*By the Court.*—Order affirmed.