ANN WALSH BRADLEY, J. (dissenting).
¶44 In seeking to extend the involuntary commitment of S.L.L., Waukesha County encountered a problem: S.L.L., a homeless individual, was nowhere to be found. As a result, she did not receive notice of the County's intent to extend her commitment.
¶45 Regardless, the County forged ahead with commitment proceedings. In S.L.L.'s absence, it obtained from the circuit court a default order extending S.L.L.'s commitment. Additionally, it sought and received an order authorizing the involuntary administration of psychotropic medication.
¶46 Despite the injustice apparent on the face of such an in absentia procedure, the majority declares that individuals may be defaulted into civil commitment without notice of the commitment hearing. It *373 creates a procedural end-run around a merits hearing in which an individual's physical liberty hangs in the balance.
¶47 Worse yet, it permits subjecting an individual to involuntary-including forced-administration of psychotropic *160 medication immediately upon the individual's detention, without assessing dangerousness and without providing notice or an opportunity to be heard.
¶48 Psychotropic medication is not aspirin. Such powerful medications are mind-altering and can have severe and irreversible side effects-immobilizing mind and body.[1]
¶49 Because neither Wisconsin statutes nor due process countenance such in absentia orders, I respectfully dissent.
I
¶50 S.L.L. had been previously subject to a Chapter 51 mental commitment. Before that commitment expired, the County applied to the circuit court for a 12-month extension of her commitment. Majority op., ¶6. The circuit court scheduled a hearing on the petition and sent a notice of the hearing to S.L.L.'s attorney and to her last known address-a homeless *374 shelter from which she had been banned.[2] Id. Not surprisingly, the notice directed to S.L.L. was returned as undeliverable.[3] Id.
¶51 On the appointed day for the extension hearing, S.L.L., having received no notice, was not present. Id., ¶7. Nevertheless, the circuit court proceeded in her absence. Id. Her attorney attended and made arguments on her behalf.[4] Id.
¶52 After determining that S.L.L. remained subject to its jurisdiction, the circuit court found: "She has not appeared here today. She's in default of her right to object." See id. Based on S.L.L.'s alleged default, the circuit court extended her commitment: "I'm [going to find] the elements, based upon that default, to extend.... I'll find that she continues to be mentally ill. I'll find that she is a proper subject for treatment ...."
¶53 Accordingly, the circuit court extended S.L.L.'s commitment for twelve months. Id. It further ordered that the County be authorized to involuntarily medicate S.L.L. for the duration of her commitment. Id.
*375 ¶54 The majority determines that the circuit court's procedure as delineated above complied with both statutory and constitutional requirements. In the majority's view, service of the notice of hearing on S.L.L.'s attorney was sufficient and it is "irrelevant that the copy mailed to Ms. L. was returned as undeliverable." Id., ¶28. It further posits that although "[s]ending notice to her at the homeless shelter was probably a foreseeably futile attempt when made," it was nevertheless constitutionally *161 sufficient due to S.L.L.'s "failure" to "keep[ ] the County apprised of her current address." Id., ¶30.
II
¶55 The majority errs in its interpretation of Wis. Stat. § 51.20.
¶56 In an initial misstep, the majority erroneously claims that Wis. Stat. §§ 51.20(10) - (13) are the only provisions that govern the procedure for commitment extension hearings. See majority op., ¶27. It is true that § 51.20(13)(g)3. directs the court to subsections (10)-(13) "[u]pon application for extension of a commitment[,]" but in order to "apply" for a commitment extension, the government is required to file a petition under § 51.20(1).[5] The notice requirements set forth in § 51.20(2) apply to all petitions under ch. 51, including petitions to extend an individual's commitment.
*376 Additionally, even a cursory review of § 51.20 as a whole reveals that other subsections are applicable as well.[6]
¶57 Even if one were to wear textual blinders as the majority wishes, Wis. Stat. § 51.20(10)(a) explicitly requires the government to notify "the subject individual and his or her counsel of the time and place of final hearing."[7] This stands in contrast to other provisions in § 51.20, under which statutorily-sufficient service can be accomplished by serving only the subject *377 individual's counsel.[8] "And" does not mean "or." Pursuant to § 51.20(10), service of notice upon S.L.L.'s attorney, but not S.L.L., was statutorily insufficient.[9] *162 ¶58 The majority compounds its error in statutory interpretation by misreading Wis. Stat. § 51.20(10)(d). This subsection provides a procedure to follow in just the situation that arose here: "In the event that the subject individual is not detained and fails to appear for the final hearing the court may issue an order for the subject individual's detention and shall hold the final commitment hearing within 7 days from the time of detention." § 51.20(10)(d).
¶59 Although I acknowledge, as the majority does, that the first clause of Wis. Stat. § 51.20(10)(d) contains permissive "may" language, the second clause of the statute contains mandatory "shall" language. See majority op., ¶36. The statute provides that the final commitment hearing shall be held within seven days from the time of detention. Pursuant to the *378 statute, if there is no detention, the final hearing cannot be held. As S.L.L. argues in her reply brief, "When a person fails to appear for a final commitment hearing, the statute only gives the circuit court the option of issuing a detention order or not issuing a detention order. It does not give the circuit court the option of dispensing with Chapter 51."
¶60 Chapter 51 contains no default judgment provision. Nevertheless, the majority ignores the statutorily mandated procedure and reaches out to utilize a default judgment procedure found nowhere in the text of the chapter.[10] This allows for the involuntary commitment and medication of an individual without any in-person assessment regarding the individual's dangerousness. See Wis. Stat. § 51.20(1)(a)2. Additionally, it permits subjecting an individual to involuntary-even forced-administration of psychotropic *379 medication immediately upon detention without any notice or the opportunity to be heard.
III
¶61 The majority further errs by approving an egregious violation of due process.
¶62 "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.' " Mathews v. Eldridge, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Although due process does not require actual notice, due process does require the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to *163 present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
¶63 Jones v. Flowers, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), provides an apt comparison. In Jones, the Supreme Court discussed the notice that is due before the government may extinguish an individual's rights in real property to satisfy a tax delinquency. Id. at 223, 126 S.Ct. 1708.
¶64 Jones was delinquent on his property taxes, and the State of Arkansas sought to sell his property to satisfy the delinquency. Id. at 223-24, 126 S.Ct. 1708. The Commissioner of State Lands attempted to notify Jones of his delinquency and his right to redeem the property by mailing a certified letter to Jones at the delinquent property, but the letter was returned, unopened, and marked "unclaimed". Id.
¶65 Two years later, and just a few weeks before the public sale, the Commissioner published a notice of public sale in a local newspaper. Id. at 224, 126 S.Ct. 1708. The Commissioner mailed another certified letter to Jones *380 at the delinquent property attempting to notify him that his house would be sold if he did not pay his taxes. Id. This second letter was also returned, unopened, and marked "unclaimed," and the property was sold. Id.
¶66 The Supreme Court concluded "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property." Id. at 225, 126 S.Ct. 1708. Its determination rested on the principle that "when notice is a person's due ... [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it, and that assessing the adequacy of a particular form of notice requires balancing the interest of the State against the individual interest sought to be protected by the Fourteenth Amendment." Id. at 229, 126 S.Ct. 1708 (internal quotations and citations omitted).
¶67 By way of analogy, the Court likened the Commissioner's inaction in the face of the unclaimed letters as akin to the Commissioner watching the postman accidentally drop the notice down a storm drain without bothering to prepare and send a new notice. Id. "No one 'desirous of actually informing' the owners would simply shrug his shoulders as the letters disappeared and say 'I tried.' " Id.
¶68 Here, the facts and consequences are even more egregious than those in Jones. In Jones, the Commissioner did not know that notice would be ineffective at the time he sent the certified letters to the delinquent property. On the other hand, in this case, the County sent notice to the one location in Wisconsin that it knew S.L.L. would not be-the homeless shelter from which she had been banned. No one desirous of actually informing S.L.L. of the commitment *381 extension hearing would have mailed notice to a place known to have banned S.L.L. and then called it quits. The Constitution requires that additional reasonable steps be taken to attempt to provide notice to the affected party.
¶69 Yet, the majority today accepts the very argument that was rejected by the Supreme Court in Jones. The Commissioner in Jones argued that reasonable follow-up measures were not required because "notice was sent to an address that Jones provided and had a legal obligation to keep updated." Id. at 231, 126 S.Ct. 1708. Rejecting this argument, the Court determined that Jones' failure to comply with a statutory obligation to keep his address updated did not forfeit his right to constitutionally-sufficient notice. Id. at 232, 126 S.Ct. 1708 (citations omitted).
*164 ¶70 The County makes the same argument in this case. Rather than follow Jones, however, the majority instead places the blame for not receiving notice at the feet of S.L.L. This is particularly troubling because S.L.L., who previously was determined to be mentally ill, has experienced homelessness and may still be homeless. The government is required "to consider unique information about an intended recipient regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case." Id. at 230, 126 S.Ct. 1708. Yet, the majority relieves the County of this requirement.
¶71 Jones dealt with the process due before extinguishing an individual's property rights. Id. at 223, 126 S.Ct. 1708. S.L.L.'s interest in this case, i.e., her physical liberty and interest in avoiding the involuntary administration of psychotropic medication, must be at least as important as Jones' property rights. Why, then, is *382 Jones afforded more due process protections than S.L.L.? The majority does not (and cannot) explain.[11]
¶72 In addition to disregarding binding federal case law, the majority also contradicts binding Wisconsin case law. Specifically, in Shirley J.C. v. Walworth Cty., 172 Wis. 2d 371, 373, 493 N.W.2d 382 (Ct. App. 1992), the court of appeals concluded that granting summary judgment to the county in the context of a Chapter 51 commitment violated due process.
¶73 It observed that Wis. Stat. § 51.20 does not allow commitment without a hearing, and if summary judgment were allowed, "the hearing requirement in the statute would be meaningless." Id., at 378, 493 N.W.2d 382. Paramount to the court of appeals' analysis was that the final hearing in a Chapter 51 case determines whether the subject individual will lose her liberty. Id., at 379-80, 493 N.W.2d 382.
¶74 If summary judgment is disallowed in a Chapter 51 commitment case, how can it be that default judgments are allowed?[12] Chapter 51 is explicit that a final hearing on the merits must be held before *383 the subject individual is committed. Id., at 378, 493 N.W.2d 382 (citing Wis. Stat. § 51.20(10)(c) ). Yet, by allowing an individual to be defaulted into commitment, the majority creates a loophole by which that final hearing can be avoided and involuntary psychotropic medication can be administered immediately upon the individual's detention without an assessment of dangerousness and with no hearing whatsoever.
¶75 Unlike the majority, I would follow binding case law and conclude that the County failed to take constitutionally-sufficient steps to provide notice of the commitment extension hearing to S.L.L., resulting in a default judgment of commitment that violates due process.
¶76 For the foregoing reasons, I respectfully dissent.
*165 ¶77 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and REBECCA FRANK DALLET join this dissent.

The administration of psychotropic drugs is no trifling matter. See K.N.K v. Buhler, 139 Wis. 2d 190, 207 n.3, 407 N.W.2d 281 (Ct. App. 1987) ; In re Guardianship of Roe, 383 Mass. 415, 436-37, 421 N.E.2d 40 (1981) (explaining that antipsychotic medication "[is] powerful enough to immobilize mind and body[,]" has a "profound effect ... on the thought processes of an individual[,]" and has a "well-established likelihood of severe and irreversible adverse side effects ....").

A report from the Waukesha County Community Human Services Department in the record notes that S.L.L. was "not permitted to be [at the homeless shelter] due to her behavior."

The majority's characterization of the facts is misleading. It accuses S.L.L. of "absconding" from treatment. Majority op., ¶5. To "abscond" means "[t]o depart secretly or suddenly, esp. to avoid arrest, prosecution, or service of process." Black's Law Dictionary 8 (10th ed. 2014).
There is not a single shred of evidence in the record to support the assertion that S.L.L. "absconded" from treatment. Indeed, there is no evidence in the record to support any conclusions as to why S.L.L. stopped showing up for her scheduled treatments.

S.L.L.'s attorney had not heard from S.L.L. and had no information as to her whereabouts. Majority op., ¶7 n.7.

We know that compliance with Wis. Stat. § 51.20(1) is required for commitment extension proceedings because § 51.20(1)(am) provides an alternate path to prove an individual's dangerousness that can only be taken "[i]f the individual has been the subject of inpatient treatment ... immediately prior to commencement of the proceedings ...."

For example, Wis. Stat. § 51.20(3) provides that at the time a petition for commitment is filed, the court is required to ensure that the subject individual is represented by adversary counsel by referring the individual to the state public defender. Is it the majority's position that this subsection does not apply to commitment extension proceedings?
Similarly, § 51.20(5)(a) states that all hearings required to be held under Chapter 51 "shall conform to the essentials of due process and fair treatment including the right to an open hearing, the right to request a closed hearing, the right to counsel, the right to present and cross-examine witnesses, the right to remain silent and the right to a jury trial if requested under sub. (11)." Is it the majority's position that this subsection does not apply to commitment extension proceedings?

The majority relies on Wis. Stat. § 801.14(2), asserting that service upon S.L.L.'s attorney is sufficient. Majority op., ¶27. It contends that "[n]o part of this [statute] conflicts with § 51.20(10) -(13), and so it controls service of the Extension Hearing notice." Id.
However, the majority acknowledges that Chapter 801 is incorporated into Chapter 51 only to the extent it does not conflict with Chapter 51. Id., ¶22. Wis. Stat. § 51.20(10)(a) requires the government to notify "the subject individual and his or her counsel of the time and place of final hearing" (emphasis added). Section 801.14(2) does not require service on the subject individual and therefore conflicts with § 51.20(10)(a). There is no need to go to Chapter 801 for an answer that Chapter 51 already provides.

See, e.g., Wis. Stat. § 51.20(8)(bg) (notice of subject individual's noncompliance with treatment agreement sent only to subject individual's counsel, not the subject individual); § 51.20(11) (right to jury trial deemed waived unless demanded at least 48 hours in advance of final hearing provided that either the subject individual or her counsel received notice of the final hearing).

As the majority acknowledges, compliance with "statutory provisions regarding service of process is required before a [ ] court has personal jurisdiction." Majority op., ¶12 (citing State v. Aufderhaar, 2005 WI 108, ¶ 27, 283 Wis. 2d 336, 700 N.W.2d 4 ). The majority further acknowledges that "if Ms. L. is right about having not received proper notice, the Extension Order was void from the beginning" for want of personal jurisdiction. Majority op., ¶13. This is a correct statement. Accordingly, because the service provisions of Wis. Stat. § 51.20(10) were not followed, the circuit court lacked personal jurisdiction over S.L.L.

The majority says that "there is no textual suggestion that the legislature offered courts the option of a detention order in exchange for forfeiting all of the other compliance tools in the toolbox." Majority op., ¶36 n.25.
The issuance of a default judgment is not a "compliance tool." The statutorily-prescribed "compliance tool" is the issuance of a detention order. The subject individual's "compliance" is compelled by being detained and brought before the court within a short period of time for the purpose of conducting a hearing on the merits of the government's commitment petition. Wis. Stat. § 51.20(10)(d).
Here, the circuit court issued both a default judgment and a detention order. One wonders whether the detention order was a pointless "compliance tool" when issued in conjunction with a default judgment. That is, why would a court issue a detention order for the purpose of detaining the individual and holding a final hearing on the merits if a default order for commitment extension has already been issued, and the individual must first obtain relief from the default judgment before proceeding to the final ch. 51 merits hearing?

If the Supreme Court in Jones had based its analysis on the court's lack of personal jurisdiction over Jones, as the majority claims, one would expect a discussion of personal jurisdiction in the opinion. See majority op., ¶29 n.19. Not only did the Supreme Court not discuss personal jurisdiction in Jones, it did not even mention the term.

The majority claims that its analysis can live in harmony with Shirley J.C. v. Walworth Cty., 172 Wis. 2d 371, 493 N.W.2d 382 (Ct. App. 1992). It says that default judgments in ch. 51 cases are justified because, in such instances, individuals have "forfeited" their rights "through their choices and actions." Majority op., ¶34 n.24. This statement ignores the fact that S.L.L. received no notice of her final hearing, and there is no evidence whatsoever to support the proposition that S.L.L. forfeited her right to a hearing "through [her] choices and actions." See supra, ¶7 n.3.