# COURT OF APPEALS
# DECISION
# DATED AND FILED

## January 20, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No. 2022AP1530** | Cir. Ct. No. 2020TP7 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT III** |

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. S.,
A PERSON UNDER THE AGE OF 18:

RUSK COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

   PETITIONER-RESPONDENT,

 V.

R. S.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Rusk County: STEVEN P. ANDERSON, Judge. *Affirmed*.

¶1      HRUZ, J.[1]  Ruth[2] appeals an order terminating her parental rights (TPR) to Adam based on a petition filed by the Rusk County Department of Health and Human Services.  Specifically, Ruth argues that there was insufficient evidence to support the jury's verdict on the asserted ground that Adam was a child in continuing need of protection or services (continuing CHIPS) pursuant to WIS. STAT. § 48.415(2).  Accordingly, Ruth contends that the circuit court erred by denying her motion for a directed verdict at the close of the Department's evidence and her motion for a judgment notwithstanding the verdict.[3]

¶2      TPR petitions based on the continuing CHIPS ground require proof of three elements, *see* WIS. STAT. § 48.415(2), but Ruth solely challenges the sufficiency of the evidence regarding the second element.  Namely, Ruth argues that the evidence presented at trial did not establish that the Department made

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply."  *See* RULE 809.107(6)(e).  Conflicts in this court's calendar have resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case.  *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  Accordingly, we extend our deadline to the date this decision is issued.

[2]  For ease of reading, we refer to the appellant and the child in this confidential matter using pseudonyms, rather than their initials.

[3]  In her briefs, Ruth refers to her "motion for a directed verdict" in the singular, when, in fact, she technically made two such motions.  The first was a motion for a directed verdict on each count at the close of the Department's case under WIS. STAT. § 805.14(3).  The second was a motion for a judgment notwithstanding the verdict under § 805.14(5)(b).  Because there was only one relatively inconsequential witness called by Ruth in her case and because Ruth does not argue separately the merit of each denial, we adopt Ruth's nomenclature for the remainder of this opinion.  In other words, we will treat her appeal as challenging the denial of "a" motion for a directed verdict.  And, as noted below, Ruth's argument, and our analysis of the same, is that of the sufficiency of the evidence in all events.

reasonable efforts, as required by § 48.415(2)(a)2.b., to provide the services ordered in the original CHIPS dispositional order. In particular, Ruth argues that the Department failed to assist her in obtaining inpatient mental health care. The Department argues that it presented sufficient evidence of its reasonable efforts to assist Ruth. We conclude that the circuit court properly denied Ruth's motion for a directed verdict and that there was sufficient evidence to support the jury's verdict. We therefore affirm the TPR order.[4]

## BACKGROUND

¶3      Ruth is the biological mother of Adam, who was born in 2015. In September 2017, after a hearing on the Department's CHIPS petition, the circuit court entered a dispositional order removing Adam from Ruth's home. At that time, Ruth was unavailable to care for Adam because she was incarcerated. Since that date, Adam has not lived with Ruth.

¶4      The dispositional order included conditions that Ruth was required to complete in order for Adam to be returned to her care. Primarily, Ruth was required to "resolve all legal issues[,]" and "follow all rules of her probation and have no further law enforcement violations." The order also required Ruth to comply with programming associated with an alternative to revocation (ATR) and, once completed, meet twelve conditions. Among these twelve conditions were requirements that Ruth "maintain absolute sobriety," "not participate in criminal activity," and "cooperate with the [Department] including … participating in

---

[4] On appeal, Ruth does not challenge the circuit court's determination, in the dispositional stage of the proceedings, that terminating Ruth's parental rights was in Adam's best interest.

meetings with the social worker." Ruth was also required to "attend counseling to address any past or current issues."

¶5      In October 2020, the Department filed a petition to terminate Ruth's parental rights. The Department filed an amended petition shortly thereafter, asserting two grounds for termination: (1) continuing CHIPS; and (2) three-month abandonment.

¶6      A three-day jury trial was held on the amended petition regarding grounds for the TPR. A number of witnesses testified, including Ruth and her most recent social worker, Karrie Groothousen, who was assigned to Ruth's case in May 2019. Among the other witnesses called by the Department were a family advocate, a probation agent, a police deputy, a chief deputy, a jail captain, a police chief, two therapists, and a Rusk County employee. Ruth testified that she complied with the ATR referenced in the dispositional order and completed the associated program between October 2017 and January 2018. Ruth and other witnesses also testified, however, that Ruth was incarcerated for multiple periods between February 2018 and when the TPR petition was filed in October 2020. Some of these incarcerations were due to probation holds. Additionally, various witnesses, including Ruth herself, testified regarding issues with her ability to "maintain absolute sobriety."

¶7      Ruth further testified that in early 2019 she was working on a "reverse plan" with the Department. The goal of this reverse plan was to eventually return Adam to Ruth's care. Ruth elaborated that, as part of this plan, she started attending mental health counseling, alcohol and other drug abuse (AODA) counseling and began participating in parenting classes. Ruth eventually did complete a parenting class program. Ruth noted that she had a mental health

crisis in July 2019. Deputy Mark Ohmstead testified that he responded to the incident, and Ruth was taken to the hospital as a result.

¶8 Groothousen testified that at a team meeting on August 1, 2019, Groothousen informed Ruth that the Department would be recommending a TPR. According to Groothousen, the possibility of pursuing a TPR in Ruth's case had been previously discussed within the Department, including before Ruth's July 2019 mental health crisis. Groothousen testified that after she told Ruth about the recommendation, communications with Ruth were "strained" and "uncomfortable."

¶9 Throughout the period following the dispositional order and during the TPR proceedings, Ruth did engage in some mental health services. In particular, Ruth testified that from April to July 2019, she met with Abby Dieckman for AODA counseling. Dieckman, a mental health addiction therapist, testified that Ruth engaged with both individual and group therapy sessions at a clinic where Dieckman worked. However, Dieckman testified that Ruth did not complete the programming. After Ruth discontinued care at the clinic, Dieckman wrote Ruth a letter recommending a higher level of care than the clinic was able to provide and sent a copy of the letter to Groothousen and Ruth's probation agent. Both Ruth and Groothousen testified that Dieckman recommended inpatient treatment. Ruth also testified that, in August 2019, when she discontinued care at the clinic, the clinic also recommended that she resume taking medication. Ruth stated that she did not comply with that recommendation because her insurance would not cover the medication. While Ruth testified that she discussed options for obtaining the medication with the Department, Ruth did not explain what these options were. Moreover, Ruth testified that she did not follow through with seeking out these options.

¶10 Katie Plotz, a behavioral therapist, testified that in August 2020, she conducted an intake meeting with Ruth for individual therapy. That same month, Plotz met with Ruth for an individual therapy session. This session, however, was the only one that Ruth attended out of eight scheduled sessions. The same program had a group therapy component, and Ruth completed the sixteen required group sessions for that component.

¶11 As for inpatient services, the trial testimony established that inpatient treatment never occurred, which the Department does not contest on appeal. Groothousen testified that "there was not room" available for Ruth to attend inpatient treatment. As to her efforts to help facilitate inpatient treatment, Groothousen testified that she reached out to a specialized county agency, "adult services"—described as a department that frequently works with adults in need of mental health treatment and AODA—to inquire if there were options available for Ruth. Groothousen further explained that it was her "understanding … that [the Department of Corrections (DOC)] was going to set up some inpatient treatment." Earlier in her testimony, Groothousen also explained that when a person has conditions to satisfy for both the DOC and the Department, the two agencies will communicate in order to ensure an individual is "not doing one thing for [the DOC] and then having to do the same thing for [the Department]." Groothousen further testified that "[i]f [the DOC] cannot offer the service, [the Department] also will offer it."

¶12 Throughout the trial, Groothousen testified regarding her levels of communication with Ruth and other efforts during her time as Ruth's social worker for the CHIPS case. In particular, Groothousen testified that "there were times where [Ruth] would be receptive … and other times where she did not want to communicate with me." As to her own efforts, Groothousen testified that when

she started on the case, Ruth "had been doing fairly well," such that Groothousen's role at that time was "encouraging [Ruth] to continue with sobriety and all the services that she had." Groothousen further testified that she would "bring [Adam] out to [Ruth's] house for … visits" and then she would determine if Ruth needed any other resources. Groothousen testified that in the beginning of 2020, she "continued to reach out to [Ruth to] have her … come in to the office for visits or occasional drug tests" and reoffered AODA resources.

¶13 During the trial, the Department submitted an exhibit of a permanency hearing order from June 2020, which also contained notice for the potential termination of Ruth's parental rights. Groothousen testified that from June 2020 onward, Ruth engaged very little with respect to complying with her return conditions.

¶14 Once the Department rested its case at the end of the second day of trial, Ruth made two motions for a directed verdict regarding both counts contained in the amended petition. The circuit court denied both motions. As relevant to the continuing CHIPS ground, the court discussed services that were offered to Ruth and that she had completed some services but had failed to complete others. The court specifically noted that there was a referral for a higher level of services and referenced Groothousen's testimony in that regard. The court concluded that the record contained enough evidence "for a reasonable jury to find that reasonable efforts were taken to provide the services necessary."

¶15 The jury ultimately found that grounds existed to terminate Ruth's parental rights under the continuing CHIPS ground but not under the three-month abandonment ground. Concerning the continuing CHIPS ground, the special verdict form specifically asked the jury if it believed that the Department "ma[de]

7

a reasonable effort to provide the services ordered by the court," and the jury answered that question "yes." After the verdict was returned, Ruth made a motion for a judgment notwithstanding the verdict. The court denied the motion, stating, "[I]t's clear from the record that there was adequate evidence in the record to support the verdicts that the jury reached."

¶16     The circuit court later held a dispositional hearing, where it found Ruth unfit and terminated her parental rights to Adam. Ruth now appeals.[5]

## DISCUSSION

¶17     A contested TPR proceeding involves a two-step procedure. *Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julia A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. The first step is to have either the circuit court or a jury determine whether grounds exist for a TPR at a fact-finding hearing. WIS. STAT. § 48.415. During the fact-finding hearing, the petitioner must prove the allegations supporting grounds for termination by clear and convincing evidence. *Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Tanya M.B.*, 2010 WI 55, ¶52, 325 Wis. 2d 524, 785 N.W.2d 369. Once the fact-finding hearing is completed, either the court or the jury will determine if grounds for a TPR have been proven and, if so, the court *shall* find the parent unfit. *Julia A.B.*, 255 Wis. 2d 170, ¶26; WIS. STAT. § 48.424(3)-(4). "Once the court has declared a parent unfit, the proceeding moves to the second, or dispositional [step], at which

---

[5] We note that Ruth, on appeal, takes issue with a number of factual assertions in the Department's briefing. We agree that, at various points in its briefing, the Department made unsupported factual assertions. We encourage the Department, in the future, to ensure that its assertions are supported by the record. That said, we have carefully reviewed the record, and our opinion is faithful to it.

the child's best interests are paramount." ***Steven V. v. Kelley H.***, 2004 WI 47, ¶26, 271 Wis. 2d 1, 678 N.W.2d 856; *see also* WIS. STAT. § 48.426(2).

¶18 In this case, the jury found that the Department had proved the continuing CHIPS ground for terminating Ruth's parental rights. As relevant here the continuing CHIPS ground requires the petitioner to prove:

> 1. That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders ….
>
>  ….
>
> b. That the agency responsible for the care of the child and the family or of the unborn child and expectant mother has made a reasonable effort to provide the services ordered by the court.
>
> 3. That the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1., not including time spent outside the home as an unborn child; that the parent has failed to meet the conditions established for the safe return of the child to the home; and, if the child has been placed outside the home for less than 15 of the most recent 22 months, that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months, not including any period during which the child was a runaway from the out-of-home placement or was residing in a trial reunification home.

WIS. STAT. § 48.415(2)(a). For purposes of the continuing CHIPS ground, "reasonable effort" means "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court," taking into consideration the characteristics of the parent or child, the parent's level of cooperation, and other relevant circumstances of the case. Sec. 48.415(2)(a)2.a.

¶19     "A TPR is civil in nature, and the Wisconsin Rules of Civil Procedure permit directed verdicts in civil proceedings." ***Door Cnty. Dep't of Health & Fam. Servs. v. Scott S.***, 230 Wis. 2d 460, 465, 602 N.W.2d 167 (Ct. App. 1999); *see also* WIS. STAT. § 805.14(3)-(4).  Specifically, and as relevant here, "At the close of plaintiff's evidence in trials to the jury, any defendant may move for dismissal on the ground of insufficiency of evidence." Sec. 805.14(3).[6]

¶20     "We examine as a question of law whether the circuit court properly refused to grant a directed verdict." ***Tammy W-G. v. Jacob T.***, 2011 WI 30, ¶17, 333 Wis. 2d 273, 797 N.W.2d 854.  "In reviewing the denial of a motion for a directed verdict, we assess whether the record contains sufficient credible evidence, including the inferences therefrom, to sustain a finding in plaintiff's favor." ***Id.***, ¶71.  "A motion for a directed verdict should be granted only where the evidence is so clear and convincing that a reasonable and impartial jury properly instructed could reach but one conclusion." ***Scott S.***, 230 Wis. 2d at 465 (citation omitted).  Because of the circuit court's "superior advantages for judging of the weight of the testimony and its relevancy and effect," an appellate court should disturb the circuit court's decision to deny a motion for a directed verdict only when it is "clearly convinced" that the circuit court was wrong.  ***Miller v. Wal-Mart Stores, Inc.***, 219 Wis. 2d 250, 273, 580 N.W.2d 233 (1998) (citation omitted).

---

[6] In addition, after a jury has returned a verdict, a party against whom a verdict was rendered "may move the court for judgment notwithstanding the verdict in the event that the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment." WIS. STAT. § 805.14(5)(b).

¶21     Ruth's appellate arguments employ the general standards regarding the sufficiency of the evidence in relation to our standard of review, and those principles echo the foregoing. Namely, "[w]e independently review, as a question of law, whether the evidence is sufficient to support the jury's verdict." *Tammy W-G.*, 333 Wis. 2d 273, ¶17. "Our standard of review in a challenge to the sufficiency of the evidence is whether there is any credible evidence to sustain the verdict." *St. Croix Cnty. Dep't of Health & Hum. Servs. v. Michael D.*, 2016 WI 35, ¶29, 368 Wis. 2d 170, 880 N.W.2d 107. "When reviewing a jury's verdict, we consider the evidence in the light most favorable to the verdict." *Tammy W-G.*, 333 Wis. 2d 273, ¶39. "[T]he [circuit] court is the ultimate and final arbiter of the credibility of witnesses, and we must accept the [circuit] court's credibility determination[s]." *Nicholas C.L. v. Julie R.L.*, 2006 WI App 119, ¶23, 293 Wis. 2d 819, 719 N.W.2d 508.

¶22     On appeal, Ruth specifically challenges whether the Department provided sufficient evidence to prove that it made a "reasonable effort," as required by WIS. STAT. § 48.415(2)(a)2.b., to assist Ruth in obtaining mental health counseling. She focuses on the inpatient mental health care recommended by the clinic at which she was treated and by her mental health addiction therapist, Dieckman.

¶23     Ruth does not assert that the 2017 dispositional order, or any order, explicitly required her to receive inpatient mental health care; rather, she asserts that the Department was implicitly required to assist Ruth in obtaining inpatient care based on other conditions in the order and the fact of Dieckman's recommendation. While Ruth argues that the Department was "obliged to make reasonable efforts to assist Ruth in obtaining inpatient mental health care," she fails to show explicitly how that level of care was required under the conditions of

11

her CHIPS dispositional order. Instead, Ruth argues that the Department was required to provide both "case management" and "[i]ndividual [c]ounseling." Ruth asserts that these requirements, taken together, equated to an obligation of the Department to assist her with obtaining inpatient mental health care.

¶24 Ruth is correct that the Department was required to introduce clear and convincing evidence that it "made a reasonable effort to provide the services *ordered by* the court." *See* WIS. STAT. § 48.415(2)(a)2.b. (emphasis added). Ruth has not shown, however, that the circuit court ever ordered her to complete inpatient mental health care. Rather, the dispositional order required the Department only to make reasonable efforts in providing case management services and assisting Ruth in receiving individual counseling.

¶25 Even if we were to construe the conditions set out in the dispositional order to require inpatient mental health care, we conclude that there was sufficient evidence, including the reasonable inferences from such evidence, to sustain a finding that the Department made reasonable efforts to assist Ruth in complying with that requirement. Partially in an effort not to duplicate services for Ruth, Groothousen testified that she communicated with the DOC to ensure that the Department offered services if the DOC did not offer them. Specifically for inpatient mental health care, Groothousen testified that she asked another, more specialized county agency if there was available inpatient care and also communicated with the DOC regarding inpatient referral. Further, Groothousen testified that she was in contact with Ruth and would encourage her to continue utilizing the various resources offered to her.

¶26 Notably, in this case, the Department faced obstacles providing services and assistance to Ruth—circumstances that can be considered in

determining whether an agency made a reasonable effort. *See* WIS. STAT. § 48.415(2)(a)2.a. (explaining the term "'reasonable effort' … takes into consideration the characteristics of the parent …, the level of cooperation of the parent … and other relevant circumstances of the case."). There was a wealth of testimony that Ruth was frequently incarcerated, a fact that Ruth does not dispute. The jury was permitted to reasonably infer that these circumstances hindered efforts to provide Ruth with certain services, including inpatient mental health services.

¶27 Additionally, Ruth was engaged in services, but she repeatedly failed to complete various programs. Plotz testified that, in one instance, Ruth completed only one out of eight scheduled individual mental health counseling appointments, which was an explicit condition in the 2017 dispositional order. Ruth testified that the Department discussed medication coverage options with her, but she conceded that she did not follow through with the options. She did not testify that such resources were unavailable. While the Department was required to put forth reasonable efforts to assist Ruth, the Department's ability to provide services to Ruth was limited by her engagement in those services and her completion of the programs.

¶28 In sum we conclude that the circuit court properly denied Ruth's motion for a directed verdict on the continuing CHIPS ground and that there was sufficient evidence to support the jury's verdict on that ground. Reviewing the record, there was sufficient credible evidence, including the inferences therefrom, for a jury to sustain a finding in the Department's favor. *See Tammy W-G.*, 333 Wis. 2d 273, ¶71. Additionally, while inpatient mental health treatment was not a condition of Ruth's dispositional order, it is clear from the trial testimony that Ruth was referred to inpatient care, and considering the evidence in the light most

favorable to the verdict, there is sufficient evidence from which a reasonable jury could find that the Department made reasonable efforts to assist Ruth in obtaining that care. *See id.*, ¶39. We therefore affirm the TPR order following the jury's verdict finding that the Department proved the continuing CHIPS ground for termination of Ruth's parental rights.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.