COURT OF APPEALS
DECISION
DATED AND FILED

**February 21, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP2156**
**2023AP2157**

Cir. Ct. Nos. **2022TP59**
**2022TP60**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

NO. **2023AP2156**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO R. A. C., A PERSON UNDER THE AGE OF 18:

KENOSHA COUNTY DIVISION OF CHILDREN & FAMILY SERVICES,

PETITIONER-RESPONDENT,

V.

R. M. F.,

RESPONDENT-APPELLANT.

---

NO. **2023AP2157**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO R. M. F. JR., A PERSON UNDER THE AGE OF 18:

KENOSHA COUNTY DIVISION OF CHILDREN & FAMILY SERVICES,

**PETITIONER-RESPONDENT,**

V.

**R. M. F.,**

**RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

¶1     NEUBAUER, J.[1]  R.M.F., referred to herein by the pseudonym Richard, appeals from orders terminating his parental rights with respect to his children, referred to herein by the pseudonyms Russell and Rebecca.  Richard's children were taken into custody and found by a trial court to be in need of protection or services.  After a four-day trial, a jury found that Richard had failed to meet conditions set by the court for the safe return of his children.  After the jury's verdict, the court held a hearing at which it determined that termination of Richard's parental rights would be in his children's best interests.  On appeal, Richard argues that before the trial began, the court made an extended series of remarks in front of the prospective jurors that improperly "advocat[ed] the State's position" and demonstrated bias.  Richard also contends that the court improperly injected the "best interest of the child" standard into the trial.  For the reasons that follow, this court disagrees and affirms the orders.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

**BACKGROUND**

¶2       Termination of parental rights proceedings involve two phases:  the grounds phase and the dispositional phase.  *See Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶¶24-28, 255 Wis. 2d 170, 648 N.W.2d 402.  In the grounds phase, a fact-finding hearing is held at which the government bears the burden to prove by clear and convincing evidence that grounds exist to terminate a parent's rights.  *See* WIS. STAT. §§ 48.31(1), 48.415; *State v. C.L.K.*, 2019 WI 14, ¶3, 385 Wis. 2d 418, 922 N.W.2d 807.  During this phase, "[t]he focus … is [on] whether the § 48.415 ground has been met, not the child's best interest."  *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854.  If the factfinder determines that the government has established grounds to terminate under § 48.415, "the court shall find the parent unfit."  WIS. STAT. § 48.424(4).  The proceeding then enters the second, dispositional phase, during which "the court is called upon to decide whether it is in the best interest of the child that the parent's rights be permanently extinguished."  *See Steven V. v. Kelley H.*, 2004 WI 47, ¶27, 271 Wis. 2d 1, 678 N.W.2d 856; *see also* WIS. STAT. § 48.426(2).

¶3       In November 2022, the Kenosha County Division of Children and Family Services (the County) filed petitions seeking to terminate Richard's parental rights to Russell and Rebecca.  According to affidavits from a social worker that were attached to the petitions, the children had been found to be in need of protection or services in January 2020 and had been placed outside the home of their parents since March 2020.  The affidavits listed the conditions that had been imposed under which the children could be returned to their parents'

home and asserted that, despite reasonable efforts by the County, the parents had failed to meet them.

¶4 The trial court held a four-day trial in the grounds phase in April 2023. At the conclusion of the trial, a jury found that Richard had failed to meet the conditions set for the safe return of his children. The court subsequently determined that the children's best interests would be served by terminating Richard's parental rights and entered termination orders.

## DISCUSSION

### I. Trial Court Remarks Before Jury Selection

¶5 Richard's arguments on appeal focus on remarks made by the trial court before trial as the grounds phase began. At the start of the first day of trial, the court made an extended statement to the prospective jurors about the case. The court began by describing the general nature of a termination of parental rights proceeding, which included a right to trial by jury. It informed the prospective jurors that the cases involving the two children were being "conducted" or "commenced" in the children's "best interest." And it informed them that the County "has asserted a number of grounds why" it would be in the children's best interest to terminate the parental rights of their parents, "[a]nd so that's what you're here for is to determine whether those grounds exist."

¶6 After identifying the parties and lawyers who would be present for the trial, the trial court stated that it would "briefly discuss what's alleged in the petition." It then informed the prospective jurors that the parents did not consent to the termination of their rights but that the children's guardian ad litem had "entered … a plea of no contest" to the allegations, which "in this instance is a

4

concession that I don't agree, I'm not going to agree, but I'm not going to dispute it, and so it can be taken as being true without further proof." The court then said that it had not correctly described the effect of the plea and stated that it "means [the guardian ad litem] does not dispute the correctness of what has been alleged in the petition and in the list of specifications which I'm about to give you."

¶7      The trial court then reviewed the procedural history of Rebecca's case, noting that a court had found her to be in need of protection or services in March 2020 and placed outside her parents' home. It told the prospective jurors that Richard had been warned of the possibility that his parental rights could be terminated and that he had received verbal and written notice of the conditions he would be required to meet before his children would be returned. The court then read the lengthy list of conditions for return, after which it told the prospective jurors that "grounds for the termination of [Richard]'s rights regarding [Rebecca] also allege that although the Department made a reasonable effort to provide the services ordered, [Richard] has failed to meet the conditions required for safe return of the child to his home." The court concluded its remarks as follows:

> A petition alleges that [Richard] is an unfit parent and that it is in the child's best interests to terminate the parental rights of each of these parents; that's what the dispute is about. As I have indicated, the pleas have been denial and we're going to pick the jury now ….

In total, the court's introductory remarks cover thirteen pages of trial transcript. At no point during or after the remarks did Richard's counsel raise an objection to them.

¶8      On appeal, Richard argues that the trial court's remarks "smack[ed] of bias because it appeared that the [court] had both accepted the allegations as

5

true, but, also that they had already been adopted by the Court." He contends that the remarks made it appear "that the [court] was advocating the State's position," which constituted a structural error that mandates reversal of the termination orders.

¶9 "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. "When analyzing a judicial bias claim," this court begins with a presumption "that the judge was fair, impartial, and capable of ignoring any biasing influences." *State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114. "To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of the evidence." *Miller v. Carroll*, 2020 WI 56, ¶16, 392 Wis. 2d 49, 944 N.W.2d 542. "If a party rebuts this presumption and shows a due process violation, the error is structural and not subject to a harmless error analysis." *Id.*

¶10 Judicial bias may be either subjective or objective. *See State v. O'Neill*, 2003 WI App 73, ¶11, 261 Wis. 2d 534, 663 N.W.2d 292 (2002). Here, Richard argues objective bias, which exists when "there is 'a serious risk of actual bias—based on objective and reasonable perceptions.'" *Wisconsin Voter All. v. Reynolds*, 2023 WI App 66, ¶37, ___ Wis. 2d ___, ___ N.W.3d ___ (quoting *Miller*, 392 Wis. 2d 49, ¶24). To determine whether a serious risk of actual bias exists, this court must assess "whether the circumstances 'would offer a possible temptation to the average … judge to … lead him not to hold the balance nice, clear and true.'" *Miller*, 392 Wis. 2d 49, ¶24 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 885 (2009) (omissions in original)). Only exceptional

cases involving "extreme facts" will present "a serious risk of actual bias." *Miller*, 392 Wis. 2d 49, ¶24 (citation omitted).

¶11    This is not such a case; Richard's arguments fall short of showing that the trial court's introductory remarks gave rise to a serious risk of actual bias. Though lengthy, the court's remarks introducing the case to the prospective jurors did not, as Richard contends, suggest that it had accepted or adopted the allegations in the petition as true. To the contrary, the court characterized the contents of the petition as allegations, stated that the County had the burden to prove them to be true, and informed the prospective jurors that it would be their job to determine whether the County had met its burden.

¶12    Near the start of its remarks, the trial court stated that the County had "asserted a number of grounds" for terminating Richard's parental rights and that it was for the jurors "to determine whether those grounds exist." When the court turned to discuss the contents of the petition, it prefaced its discussion by stating that the County had the burden "to prove by evidence which is clear, convincing and satisfactory that the grounds are sustained." The court then provided an overview of the allegations, including a recitation of the conditions that had already been imposed for the return of Richard's children. After reading the conditions, the court again stated that the petitions *alleged* a basis to terminate the parents' rights. Finally, the court noted that the parents denied the County's allegations.

¶13    No language in the trial court's introductory statement expressly communicated or even suggested that it believed the allegations to be true or had already found them to be true. Absent such language, Richard is left to argue that the disparity between the amount of time the court spent reviewing the allegations

7

and the comparatively brief mention that the parents denied them, by itself, establishes a serious risk of actual bias.[2] Given the language from the court's statement highlighted above, this court is not persuaded that this disparity alone is sufficient to carry Richard's burden.

¶14 Richard also ignores instructions given by the trial court before and after the presentation of evidence that made clear the jury's role as the sole finder of fact and required them to disregard any impression about the court's view of the facts. Before opening statements, the court instructed the jurors that they

> must not infer from any ruling that I make or from anything that I should say during the trial that I hold any views for or against any party. And not only that, even if I did, you have to disregard those entirely; that's why we have a jury to keep the judge from deciding.

The court also informed the jurors that they would be "the sole and exclusive judges of the facts" and that they were to determine the facts "from all the testimony that you hear and from exhibits that are submitted to you." Finally, the court told the jurors that it would instruct them as to the applicable law after the presentation of evidence but would not "give [them] any instructions as to what the facts are."

¶15 After the presentation of evidence, the trial court again instructed the jurors to disregard any impression they had about the court's view of the facts:

> If any member of the jury has an impression that I have an opinion one way or another in this case, disregard that impression entirely and decide the issues solely as you

---

[2] Richard identifies no other statements or rulings made by the trial court during the trial as evidence of bias.

view the evidence. You, the jury, are the sole judges of the
facts, and the court is the judge of the law only.

*See* WIS JI—CHILDREN 120. These instructions, which this court presumes the jury followed, further dispel Richard's contention that the entire trial process was infected by judicial bias. *See State v. Hanson*, 2010 WI App 146, ¶24, 330 Wis. 2d 140, 792 N.W.2d 203 ("It is well established that '[j]uries are presumed to follow proper, cautionary instructions.'" (alteration in original; citation omitted)), *aff'd*, 2012 WI 4, 338 Wis. 2d 243, 808 N.W.2d 390.

## II. References to the "Best Interest" Standard

¶16 Richard's other argument is that the trial court "improperly injected the best interest of the child standard into" the grounds phase. He bases this argument on the following portion of the court's introductory remarks to the prospective jurors:

> The two cases have been consolidated. They involve two children who share a common parent—two common parents. One of the cases is in the interest of [Rebecca], that's the child's name, and the proceeding is conducted in her best interest. And the other case is in the interest of [Russell], and the action is commenced in his best interest. And in each case what is being alleged is that the petitioner has claimed that it is contrary to the best interests of these children to maintain the parental relationships between them and their natural parents.

Richard contends the court's references to the best interest standard constituted a structural error requiring reversal.

¶17 Again, this court disagrees. It is true that the best interest of a child is not to be considered during the fact-finding hearing in the grounds phase. *Door Cnty. Dep't of Health & Fam. Servs. v. Scott S.*, 230 Wis. 2d 460, 468, 602 N.W.2d 167 (Ct. App. 1999). But as this court made clear in *Scott S.*, reversible

error only occurs "when the court or the GAL instruct the jury that it should consider the best interests of the child" during the grounds phase. *See id.* at 469.

¶18    Here, that did not occur. To the contrary, as Richard acknowledges, the trial court instructed the jury that its verdict was *not* to be based on any consideration of the children's best interests, but instead solely on whether the County had proven a ground for termination. Specifically, the court gave the following standard instruction on this topic after the close of evidence:

> I want to again emphasize that this hearing is only one part of a process that may result in termination of parental rights.
>
> In this jury trial, the first phase of the proceedings, your responsibility is to determine what the facts are from all the evidence and answer the questions on the special verdict that will be submitted to you. Your answers will determine whether the State has proved that a ground or grounds for termination of parental rights exists. However, you are not being asked to decide if parental rights should be terminated. Based on your answers to the questions on the special verdict, it will be my responsibility to conduct further proceedings and hearings, and it is solely and ultimately my responsibility to determine if parental rights should be terminated based upon factors the law requires a court to consider if grounds for termination of parental rights are proven. You should not be concerned with what the final result of this jury proceeding might be, and you should not be concerned with what the final result of this entire lawsuit might be.
>
> Consideration of the best interests of the child is a matter for the court in proceedings which will be conducted in the future; it is not a consideration for the jury.

*See* WIS JI—CHILDREN 301.

¶19    Notwithstanding this express caution not to consider the children's best interest, Richard contends that the references to the termination proceedings being brought in the children's best interest were clothed in the "color of law"

because they were made by the trial court and that their impact on the jury is impossible to quantify. This court disagrees; the trial court merely stated that the County had commenced the termination proceedings in the interests of the children. That was an accurate description of the proceedings. The court did not direct or even suggest that the jurors should factor the children's best interest into their evaluation of the evidence or their deliberations. Absent such an instruction, the isolated (and accurate) references to the proceedings having been commenced in the children's interest furnish no basis for relief.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.